**INTERTHERM, INC., Respondent,**

**v.**

**STRUCTURAL SYSTEMS, INC., Appellant.**

**No. 56803.**

Supreme Court of Missouri,
Division No. 2.

Jan. 14, 1974.

Isaac E. Young, St. Louis, for plaintiff-respondent-cross appellant.

Maniscalco, Clancy, Pittman & Bagot, Cyril J. Clancy, Clayton, for appellant.

MORGAN, Judge.

Plaintiff instituted suit against defendant to recover $52,500 for alleged breach of a certain contract wherein defendant agreed to construct a warehouse by July 16, 1965, and thereafter lease the same to plaintiff. Defendant counterclaimed for a forfeiture of the contract (lease) and restitution of the premises. Judgment was entered on the petition for plaintiff in the sum of $10,500 plus interest (a total of $13,220) from which both plaintiff and defendant appealed. Defendant appealed from the judgment in favor of plaintiff on the counterclaim. Jurisdiction is in this court by virtue of the amount involved since the appeals were filed prior to January 1, 1972, to-wit: April 20, 1971. We affirm.

Although not requested, the trial court made findings of fact and conclusions of law as follows:

"1. The parties entered into a lease agreement on June 21, 1965. Said lease provided in part that: Defendant was to construct a warehouse to be occupied by plaintiff. The warehouse was to be completed and ready for occupancy by July 16, 1965. Defendant agreed to pay plaintiff the sum of $500.00 per day for each working day after July 16, 1965 that the warehouse structure was not ready for occupancy.

2. The warehouse structure was not ready for occupancy by plaintiff until December 15, 1965. A total of 105 working days elapsed between July 16, 1965 and December 15, 1965.

3. The lease between the parties provided for extensions of time to defendant for delays occasioned by reason of strikes, acts of God, unavailability of materials, acts of Lessee or Lessee's failure to act when otherwise required to act or other causes beyond Lessor's control.

4. Defendant was delayed in the construction of the warehouse structure by weather conditions, by a strike, by unavailability of materials, through change of plans by plaintiff and by other causes beyond the control of defendant. The delay resulting therefrom totaled 84 days as more fully set out, to-wit:

5 days—due to grade differences,

14 days—due to change of plans,

12 days—due to delay in obtaining permits,

25 days—due to delay in getting materials,

4 days—due to workers strike,

8 days—due to refusal of workers to work because of weather,

16 days—due to weather conditions.

The Court finds as to defendant's counterclaim that:

1. Plaintiff executed the lease under the name of International Oil Burner Co. Thereafter plaintiff's name was changed to International Industries, Inc. and then to Intertherm, Inc.

2. Plaintiff's occupancy of the warehouse structure was in accordance with the terms of the lease.

3. Plaintiff kept in force all insurance policies as required in the lease.

### CONCLUSIONS OF LAW

The lease entered into by the parties on June 21, 1965 was a valid and subsisting agreement. The $500.00 per day for each working day as damages provided in the lease was not disproportionate to actual damages established by plaintiff and therefore was not a penalty provision.

Plaintiff is entitled to recover from defendant the sum of $500.00 for 21 days, the difference between the 105 days delay in the occupancy of the building by plaintiff and the 84 days extension to which defendant is entitled.

The defendant is not entitled to recover under its counterclaim.

FINDING AND JUDGMENT in favor of plaintiff and against defendant on plaintiff's cause of action in the amount of $10,500.00 with interest thereon of $2,520.00 from December 28, 1966 at 6% per annum, a total of $13,220.00 and in favor of plaintiff and against defendant's counterclaim. Costs against defendant."

We do observe, initially, that the record confirms that this is not a case involving an unusual set of facts nor any novel question of law. The trial revolved around the efforts of skilled counsel for both parties to persuade the trial court what the true facts actually were.

 First, we consider the *petition*. As is obvious from the factual findings noted, plaintiff's effort to recover damages was bottomed on its claim that the delay, reference each of the 105 days, was not for reasons agreed to by the parties. On the other hand, defendant sought to prove that each day of delay was caused by a circumstance authorized by the contract. Detailing such evidence herein would be of slight benefit generally and of no benefit at all to the parties, who are aware of the

conflicting testimony. In such instances, Rule 73.01(d) provides, in effect, that deference will be given to the conclusions of the trial court that had an opportunity to ". . . judge of the credibility of the witnesses . . .." McCarty v. McCarty, 300 S.W.2d 394 (Mo.1957); March v. Gerstenschlager, 436 S.W.2d 6 (Mo. 1969). From our review of the record, we conclude that the evidence was such as to sustain the trial court's finding that twenty-one days of the delay were chargeable to defendant by the terms of the contract. In connection with defendant's argument that the agreed $500 per day damage figure was actually a legally prohibited "penalty" provision, we find sufficient evidence in the record to sustain the trial court's conclusion that the "damages provided in the lease [were] not disproportionate to actual damages established." Such being so, the agreed amount is not to be considered oppressive and unenforceable, Wilt v. Waterfield, 273 S.W.2d 290, 295 (Mo. 1954), and may be accepted as agreed "liquidated" damages. In another point, defendant submits that certain acts of plaintiff (submission of an incorrect topographical survey) contributed to cause defendant's failure to perform as was recognized by the trial court when it extended the completion date by "5 days—due to grade differences," and that such being true, any recovery by plaintiff should have been limited to a showing of actual damages instead of basing the same on an apportionment of liquidated damages, United States v. Kanter et al., 137 F.2d 828 (8th Cir. 1943); Mo.Dig., Damages, in violation of the general rule. Defendant relies primarily on the opinion of this court in Gillioz v. State Highway Commission, 348 Mo. 211, 153 S.W.2d 18 [6–8] (1941), wherein the rule was followed, and seeks to apply it to the instant case. Such reliance is ill-founded, for in the Gillioz case this court recognized certain exceptions to the general rule, 153 S.W.2d l.c. 25, to-wit: "The general rule is that, except under unusual circumstances or *definite contractual provisions*, there can be no appor-

tionment of liquidated damages (or recovery of any part thereof by a party at fault for substantial delay) even when the parties are mutually responsible for delays preventing completion on time." (Emphasis added.) The trial court found the "definite contractual provisions" exception applicable in this case. We believe that it was. Having found that the judgment entered on the petition by the trial court can be sustained by the record, we find that the same was not erroneous.

■ Second, we consider the *counterclaim*. Defendant, therein, alleged that plaintiff had failed to use the building in conformity with the lease and had failed to deliver to defendant copies of certain insurance policies as called for in the agreement. As to the latter complaint, it is agreed that plaintiff, as occupant of the building, had obtained all insurance protection for all parties as was specified in the lease but that there had been a failure to deliver the copies. As to the contention plaintiff had violated certain safety standards in its use of the building, it is of interest that this complaint was premised, generally, on a city inspection on March 20, 1969, which was several years after plaintiff filed its original petition on December 28, 1966. That inspection indicated a "scarcity of cross aisles" and "inadequate containers for the storage of any combustible trash" plus inadequate partitions. Whether or not corrective measures precisely eliminated each complaint can not be determined from the record, although it was established that the "occupancy permit [was] presently valid." From all of which, the trial court concluded that "plaintiff's occupancy of the warehouse structure was in accordance with the terms of the lease." We do believe that the evidence is sufficient to sustain the conclusion reached and is not erroneous, but, in any event, the record clearly shows a "substantial" compliance with the lease agreement. Ambassador Bldg. Corporation v. St. Louis Ambassador Theatre, Inc., 185 S.W.2d 827, 840 [9] (Mo.App.1945). Therefore, it is

not necessary to consider what, if any, rights defendant might have waived or forfeited by continued acceptance of rental payments. Lucas Hunt Village Co. v. Klein, 218 S.W.2d 595 [4] (Mo. banc 1949).

The judgment is affirmed.

All of the Judges concur.