**Thomas and Debra WEINDEL,
Plaintiffs/Respondents,**

v.

**DeSOTO RURAL FIRE PROTECTION
ASSOCIATION, INC.,
Defendant/Appellant.**

No. 54613.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 28, 1989.

Robert J. Wulf, St. Louis, for defendant/appellant.

John D. Rayfield, Crystal City, for plaintiffs/respondents.

GARY M. GAERTNER, Judge.

Appellant, DeSoto Rural Fire Protection Association, Inc., (hereinafter referred to as the Association) appeals from a jury verdict in favor of respondents, Thomas and Debra Weindel, and against the Association in the amount of $17,500. The Association raises three claims of error on appeal. The Association maintains the Weindels failed to prove the damages attributable to negligence on the part of the Association. The Association also alleges Thomas Weindel waived all negligence claims against the Association when he signed an alleged release upon purchasing a fire tag. Finally, the Association argues it has a right to a credit against the final judgment due to an advance payment allegedly made pursuant to RSMo § 490.710 (1986). Finding the Association's contentions to be without merit, we affirm.

The evidence reveals that in November of 1985, the Association provided volunteer firefighting services for the rural DeSoto area. Residents of the area served by the Association became entitled to firefighting services upon purchasing a metal fire tag at Mueller Electric in DeSoto for a fee of $12.50. These tags were sold on a year to year basis. Upon paying $12.50 one received a tag, which tag had the appearance of a license plate and varied in color from year to year. The purchaser was to post the tag on his property. In addition to receiving the tag, the purchaser also received a paper receipt. Two copies of this receipt were generated at the time of purchase with one going to the Association and the other to the DeSoto Police Department. The police department served as the Association's dispatcher. Thus, whenever one would call in a fire the dispatcher at the police department would request the name of the person who owned the particular residence which was on fire, and would

then look through the receipts to ascertain if that individual had purchased a fire tag. If the records showed a tag had been purchased, the dispatcher would contact the volunteer firefighters in order to fight the fire; if the records indicated a tag had not been purchased firefighters would not be dispatched.

On November 28, 1985, a fire occurred in the Weindels' mobile home while they were away. It is not disputed that Thomas Weindel had purchased a fire tag which was valid on November 28, 1985, and that the tag was posted on the residence so as to be visible from the road, which was named Fox Farm Road. No written instruction on the use or display of a tag was given when one purchased a tag. As well, the persons who sold the tags were not employees of the Association. At 9:23 p.m. on the night of November 28th, someone called the dispatcher as to a fire at the Weindel mobile home. This individual identified the property as being on Fox Farm Road and belonging to an E.M. Moss. As no receipt was found for property owned by an E.M. Moss on Fox Farm Road, the dispatcher did not notify the firefighters. A second and third call were also received by the dispatcher as to a fire on Fox Farm Road with neither caller identifying the owner of the property. Finally, at 9:34 p.m. a fourth call was made to the dispatcher by Dennis Farris, an adjoining property owner to the Weindel property. Although Dennis Farris did not identify the owner of the property which was on fire, he requested protection because the fire had the potential to endanger his property. Because the dispatcher located a receipt for the Farris property, she dispatched firefighters. The firefighters arrived at 9:46 p.m. They did not attempt to approach the Weindels' home to look for a fire tag. The firefighters' first notification that the house on fire was the Weindel residence occurred when Thomas Weindel's parents arrived and informed the fire chief that it was their son's residence and that he had a fire tag. However, by this point the mobile home was "practically level," according to the fire chief.

▪ In the Association's first point, it claims there was insufficient evidence to allow submission to the jury of the issue of whether the Association's negligence was the proximate cause of the Weindel's damages. The law is clear that it was the Weindel's obligation to make their case so as to remove the issue of the amount of damages from the field of conjecture, and to establish the amount of damages attributable to the Association's negligence by substantial evidence of probative value, or by inferences reasonably drawn from the evidence. *New Style Homes, Inc. v. Fletcher*, 606 S.W.2d 510, 513 (Mo.App., W.D.1980). For, speculative results are not a proper element of damages. *Wise v. Sands*, 739 S.W.2d 731, 734 (Mo.App., S.D. 1987). However, where it is certain that damage resulted, uncertainty as to the amount will not preclude recovery. *Blackburn v. Carlson Seed Co.*, 321 S.W.2d 520, 523 (Mo.App., S.D.1959). Thus, even if one cannot measure the damages exactly, the law only requires that the evidence, with such certainty as the evidence will permit, lay a foundation to enable the jury to make a fair and reasonable estimate. *Id.* A plaintiff need only produce the best evidence available such that it is sufficient to afford a reasonable basis for estimating the damages. *Id. See also Sides Construction Co. v. Arcadia Valley R–II School District*, 565 S.W.2d 761, 768 (Mo. App., E.D.1978).

▪ The evidence showed that firefighters would have been sent at least ten minutes earlier if after the first report of a fire the Association's system had shown the Weindel home was protected. Thus, the evidence showed that ten minutes was lost in fighting the fire due to the Association's negligence. Thomas Weindel testified that the family's total actual damages due to the fire were approximately $57,065. The jury returned a verdict in the amount of $17,500, and found the Association to be 100% negligent. It is clear that the jury found the Association totally responsible for the delay in fighting the fire and made a fair and reasonable estimate that the Weindels incurred $17,500 in damages as a result of the delay. We will not preclude

recovery because the Weindels could not present detailed evidence as to what the fire burned as it progressed and in what order. Such evidence was not available, and the Weindels only needed to present the best evidence available, which evidence did afford a reasonable basis for estimating the damages. This point is denied.

In the Association's second point, it claims Thomas Weindel waived or released the Weindels' claim for damages against the Association. The Association alleges this occurred when Thomas Weindel bought the fire tag and signed the receipt for the tag. The relevant section of the receipt states:

It is understood by all parties that the acceptance by the De Soto Rural Fire Protection Association, Inc., of the fee for the fire tag purchased by the above named applicant imposes a duty upon the De Soto Rural Fire Protection Association, Inc., to perform such services in fire fighting as in the sole discretion of the association is proper, taking into consideration among other things the amount of equipment available, the amount of Manpower [sic] available, the weather and the reporting method in notifying the association of the existence or threat of a fire. The association shall not be subject to suit by any individual acquiring any tag, nor by anyone seeking to recover pursuant to said tag holders claims or rights. No right or claim of any tag holder can be transferred or assigned in any manner including by subrogation without prior written agreement and approval of association, and then only with written agreement from the tag holder that said tag holder will hold the district harmless from any said such assignment.

It is further agreed that neither second party, or any party claiming any rights under this document shall have the right to make any claim against the association or any individuals connected in any way with it either in contract or tort or on any other basis for any damages for failure to respond, fight a fire, put out a fire, or for any damages caused by a spread of existing fire since all parties expressly agreed the association is a volunteer non-profit association without sufficient paid employees and the said association cannot in any way guarantee the performance of any of their volunteering individuals.

■■■ An agreement to exempt or exonerate one from the consequences of his own negligence is not against public policy. *Rock Springs Realty v. Waid,* 392 S.W.2d 270, 272 (Mo.1965). One dealing with private interests may *bargain* for his exoneration from the consequences of his ordinary negligence in arriving at the meeting of the minds necessary to the formation of a contract. *Liberty Financial Management Corp. v. Beneficial Data Processing Corp.,* 670 S.W.2d 40, 48 (Mo.App., E.D. 1984). (In *Liberty,* the court held that the clause of a contract exonerating Beneficial was a bargaining point which Liberty was free to grant or withhold as part of the negotiating process for the contract. When Liberty granted the exoneration, the contract's purpose was then shaped to fit within certain parameters so that the exoneration clause did not cause the contract to fail of its essential purpose.) A release or covenant not to sue requires consideration. *Passer v. United States Fidelity & Guaranty Co.,* 577 S.W.2d 639, 648 (Mo. banc 1979); *Lugena v. Hanna,* 420 S.W.2d 335, 338 (Mo.1967). In addition, an agreement to terminate or release one from a contract is a new contract which must be supported by new consideration. *Gee v. Nieberg,* 501 S.W.2d 542, 544 (Mo.App., E.D.1973). In the present case, the release was not supported by new consideration. For, Thomas Weindel agreed to pay $12.50 in exchange for the Association's promise to perform firefighting services. Thomas Weindel's further agreement to release the Association from all contract or tort claims was not supported by new consideration by the Association. Finally, we note the language in *Aiple v. South Side National Bank,* 442 S.W.2d 145, 151 (Mo.App., E.D.1969), wherein it is stated, "There can be no release unless there exists at the time of the claimed release a bona fide controversy concerning [a] defendant's legal liability on

some issue in dispute between the parties." At the time Thomas Weindel signed the release or covenant not to sue no such controversy existed. This point is denied.

 In the Association's third point, it claims that it is entitled, pursuant to RSMo § 490.170 (1986), to an offset on the grounds that the Association paid $20,000 to the Weindels' insurer. The facts regarding this issue were stipulated to by the parties. The stipulation showed that the Weindels' homeowner's insurer paid the limits of the Weindels' policy ($36,000) to the Weindels. It was further stipulated to that the Association's insurer issued a check in the amount of $20,000 payable to "Med James, Inc. as subrogee of Thomas and Debra Weindel." Based on these facts the trial judge ruled that the Association was not entitled to a credit on the judgment of $17,500. We agree. Section 490.-710 (1986) provides in pertinent part:

1. No advance payment or partial payment of damages ... as an accommodation to an injured person, or on his behalf to others, ... shall be admissible into evidence....

2. Any payments made as provided in subsection 1 of this section shall constitute a credit and be deductible from any final settlement or judgment rendered with respect to such injured ... person.

The stipulation submitted by the parties did not show that the payment by the Association's insurer was as an "accommodation to an injured person" (the Weindels) or on the Weindels' "behalf." There was no showing that the Weindels owed money to Med–James, Inc. and, if they did, that they directed the Association's insurer to make a payment on their behalf.

Further, the Association's brief baldly asserts that the Weindels' insurer asserted a subrogation claim against the Association's insurer; thus, the brief asserts the payment of $20,000 was made in settlement of that claim. There is no evidence to support the Association's theory. This point is denied.

The judgment of the trial court is affirmed.

KAROHL, J., concurs.

GRIMM, P.J., concurs in result.