**PURCELL TIRE & RUBBER COMPANY, INC.,**
Appellant,

v.

**EXECUTIVE BEECHCRAFT, INC., Respondent.**

No. SC 83383.

Supreme Court of Missouri, En Banc.

Nov. 20, 2001.

simply against a higher standard of proof.

Morry S. Cole, Maurice B. Graham, St. Louis, for Appellant.

Robert W. Cotter, Kent M. Bevan, Patrick J. Kaine, Kansas City, for Respondent.

DUANE BENTON, Judge.

The circuit court enforced a commercial contract that limited liability to the contract price. After opinion by the Court of Appeals, this Court granted transfer. *Mo. Const. art. V, sec. 10.* Affirmed.

## I.

This Court reviews the record in the light most favorable to Purcell Tire & Rubber Company, Inc. (against whom judgment was effectively entered), according it the benefit of all reasonable inferences from the record. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

Purcell Tire decided to buy a used Beechjet 400 airplane. Before the closing, its president, Robert G. Purcell, asked Executive Beechcraft, Inc. about inspecting the plane. Beechcraft faxed a three-page contract to Purcell. The contract has print only on the front of each page, in 11–point type. The contract begins:

AIRCRAFT PRE–PURCHASE SURVEY

The following is a list of items that will be checked in order to complete an Aircraft Pre–Purchase Survey. This survey is a statement of aircraft condition at that time. It is NOT however, a statement of airworthiness.

Executive Beechcraft makes no guarantee or warranty, either express or implied, concerning the condition or the remaining useful life of the aircraft, it's [*sic*] systems, avionics or other installed equipment.

If the items listed below do not meet your needs for a pre-purchase survey, Executive Beechcraft, Inc. will be happy to perform an inspection in accordance with the manufacturers inspection programs or Federal Aviation Administration FAR's.

The contract then lists—for two pages—the 45 items to be surveyed. The contract next addresses payment:

> Pricing for the Pre–Purchase Survey is as follows:

| | |
|---|---:|
| Single engine, non-retractable | $ 400.00 |
| Single engine, retractable, non-pressurized | 550.00 |
| Twin engine, retractable, non-pressurized | 650.00 |
| Twin engine, retractable, pressurized | 900.00 |
| Light twin turbo jet | 1,250.00 |

> We the buyers/sellers agree to the above survey on aircraft N 25 B.N.
>
> Serial number RJ.7.
>
> We agree to pay in full at the completion of the Pre–Purchase survey.

Because the plane was a twin turbo, the price was $1,250. The next (and last) paragraph of the contract, directly above the signature, says:

> It is expressly agreed that the liability, if any, of Executive Beechcraft, Inc. under this agreement shall be limited to the cost of services performed hereunder. All parties to this agreement expressly agree to indemnify and hold harmless Executive Beechcraft, Inc. from any damages or expenses claimed by any part [*sic*] to this agreement beyond the cost of the services performed hereunder.

Purcell read, signed, and faxed the contract back to Beechcraft. Purcell did not request any changes in the contract.

Beechcraft surveyed the plane, wrote a report, discussed the findings with Purcell, but never mentioned any oil leak. In July 1997, Purcell Tire purchased the plane for $2,080,000. In fall 1997, its mechanics discovered an oil leak, which grew progressively worse. In December 1997, Purcell Tire had an engine repaired.

Purcell Tire sued Beechcraft for breach of contract and negligence, claiming $372,458 in damages. Beechcraft moved for summary judgment, citing the affirmative defense that the contract limited liability to the $1,250 price.

The circuit court enforced the limitation of liability. Beechcraft then confessed judgment for $1,250. Purcell Tire appeals.

## II.

■ If there is no genuine dispute about the facts supporting Beechcraft's affirmative defense and Beechcraft is entitled to judgment as a matter of law, summary judgment was appropriate. *Rule 74.04(c)(3)*; *ITT*, 854 S.W.2d at 376. Appellate review of summary judgment is de novo. *Id.* at 376. The validity of a liability limitation is a question of law for the court. *Warren v. Paragon Techs. Group, Inc.*, 950 S.W.2d 844, 845 (Mo. banc 1997).

## III.

■ Purcell Tire and Beechcraft are sophisticated businesses that contracted at arm's length. Purcell Tire—the 16th or 17th largest retail tire chain in America—ranks in the top four among commercial tire dealers and retread providers in the country. Its president, a former pilot, has been involved in 15 plane purchases, and 14 pre-purchase inspections.

Beechcraft, a general aviation business, performs pre-purchase surveys for plane buyers. Beechcraft also performs more stringent inspections (at additional cost) consistent with manufacturers' or Federal Aviation Administration standards.

■ Sophisticated parties have freedom of contract—even to make a bad bargain, or to relinquish fundamental rights. See *Malan Realty Investors, Inc. v. Harris*, 953 S.W.2d 624, 626 (Mo. banc 1997); *High Life Sales Co. v. Brown–Forman Corp.*, 823 S.W.2d 493, 497 (Mo. banc 1992). See generally *Warren*, 950 S.W.2d at 846; *Sanger v. Yellow Cab Co.*, 486 S.W.2d 477, 481–82 (Mo. banc 1972). Sophisticated parties may contractually limit future remedies. See *Malan*, 953 S.W.2d

at 627–28; *High Life Sales,* 823 S.W.2d at 497; *Warner v. Southwestern Bell Tel. Co.,* 428 S.W.2d 596, 601, 602 (Mo.1968); *Liberty Fin. Mgmt. Corp. v. Beneficial Data Processing Corp.,* 670 S.W.2d 40, 49 (Mo.App.1984). For example, commercial entities at arm's length may waive the right to a jury trial, or agree to forum selection (unless unfair or unreasonable). *Malan,* 953 S.W.2d at 627–28; *High Life Sales,* 823 S.W.2d at 497.

■ Purcell Tire emphasizes that courts closely scrutinize tort-liability limitations, because "[o]ur traditional notions of justice are so fault-based that most people might not expect" them to be altered. *Alack v. Vic Tanny Int'l of Mo., Inc.,* 923 S.W.2d 330, 337 (Mo. banc 1996). Clear, unambiguous, unmistakable, and conspicuous limitations of negligence liability do not violate public policy. *Id.* The contract "must effectively notify a party that he or she is releasing the other party from" its own negligence. *Id.*

The contract in this case limits Beechcraft's liability: "It is expressly agreed that the liability, if any, of Executive Beechcraft, Inc. under this agreement shall be limited to the cost of services performed hereunder." Sophisticated businesses that negotiate at arm's length may limit liability without specifically mentioning "negligence," "fault," or an equivalent. *Id.* at 338 n. 4. The liability limitation here does not violate public policy, because it is clear, unambiguous, unmistakable, and conspicuously located directly above the signature.

## IV.

### A.

■ According to Purcell Tire, the liability limitation is enforceable only if "bargained for," that is, supported by separate consideration. See *Schaffer v. Property Evaluations, Inc.,* 854 S.W.2d 493, 495 (Mo.App.1993); *Weindel v. DeSoto Rural Fire Prot. Ass'n,* 765 S.W.2d 712, 715–16 (Mo.App.1989). Purcell Tire claims that because the parties did not specifically negotiate the liability limitation, it was not "bargained for."

■ The character and quality of negotiations are relevant in determining whether an agreement is an adhesion contract. See, e.g., *Peters v. Employers Mut. Cas. Co.,* 853 S.W.2d 300, 301 (Mo. banc 1993). Courts enforce the objective terms of contracts between sophisticated businesses, without regard to the parties' subjective intent. See, e.g., *Emerick v. Mut. Benefit Life Ins. Co.,* 756 S.W.2d 513, 518 (Mo. banc 1988). The character and quality of negotiations do not vary the terms of a written contract between sophisticated businesses. See *Craig v. Jo B. Gardner, Inc.,* 586 S.W.2d 316, 324 (Mo. banc 1979).

Purcell Tire relies on the *Weindel* case. There, one party tried to add a liability limitation after both parties reached an agreement. *Weindel,* 765 S.W.2d at 715. This unilateral term was not enforceable. *Id.* Here, the liability limitation was part of the original agreement.

Purcell Tire also invokes the *Schaffer* case, where buyers hired an inspector for their prospective home. 854 S.W.2d at 493. The form contract limited the inspector's liability to the $153 inspection fee. *Id.* at 494. The liability limitation did not reference "negligence," "fault," or an equivalent. *Id.*

*Weindel* and *Schaffer* were decided before *Alack.* To the extent these cases imply that parties agree only to negotiated-over terms, they should no longer be followed. *Weindel,* 765 S.W.2d at 715–16; *Schaffer,* 854 S.W.2d at 495.

In sum, Beechcraft agreed to survey the plane—subject to a liability limitation—in

exchange for Purcell Tire's payment of $1,250. The agreement is supported by consideration.

### B.

■ Purcell Tire cites *Weindel* and *Schaffer* to suggest that, before a damages claim can be waived, a controversy must exist at the time of contracting. See also *Aiple v. South Side Nat'l Bank,* 442 S.W.2d 145, 151–52 (Mo.App.1969). Both cases are superseded on this point by *Alack,* which holds that future negligence claims can be waived by contract. 923 S.W.2d at 334.

### C.

■ Purcell Tire argues that the liability limitation is an unlawful penalty for breach of contract. This Court has stated that a clause fixing disproportionate damages may be a penalty. See, e.g., *Intertherm, Inc. v. Structural Sys., Inc.,* 504 S.W.2d 64, 66 (Mo.1974); *Plymouth Sec. Co. v. Johnson,* 335 S.W.2d 142, 152 (Mo. 1960); *Wilt v. Waterfield,* 273 S.W.2d 290, 295 (Mo.1954); see also *Robert Blond Meat Co. v. Eisenberg,* 273 S.W.2d 297, 299–300 (Mo.1954). More recently, the Court of Appeals invalidates, as penalties, only clauses fixing disproportionately *large* damages. See *Restatement (Second) of Contracts* sec. 356(1) (1979), *quoted in Luna v. Smith,* 861 S.W.2d 775, 778–80 (Mo.App. S.D.1993); *Grand Bissell Towers, Inc. v. Joan Gagnon Enters., Inc.,* 657 S.W.2d 378, 379 n. 2 (Mo.App. E.D.1983); *Highland Inns Corp. v. American Landmark Corp.,* 650 S.W.2d 667, 674 (Mo.App. W.D.1983). In this case, the liability limitation is not a penalty because the damages fixed are not disproportionately large.

■ Purcell Tire asserts that the damages fixed are disproportionately small, and thus, in effect, that the liability limitation is unconscionable. See *Roy A.*

*Elam Masonry, Inc. v. Fru–Con Constr. Corp.,* 922 S.W.2d 783, 790 (Mo.App.1996); *Hawkins v. Foster,* 897 S.W.2d 80, 85 (Mo. App.1995); *World Enters., Inc. v. Midcoast Aviation Servs., Inc.,* 713 S.W.2d 606, 610–11 (Mo.App.1986); *Liberty Fin.,* 670 S.W.2d at 49–50; *Restatement (Second)* sec. 356 cmt. a. Where both parties are sophisticated businesses and damages are economic, courts rarely find that liability limitations are unconscionable. See *Elam Masonry,* 922 S.W.2d at 790; *World Enters.,* 713 S.W.2d at 610–11; *Liberty Fin.,* 670 S.W.2d at 49–50; cf. *Bracey v. Monsanto Co.,* 823 S.W.2d 946, 948–50 (Mo. banc 1992). In this case, the liability limitation is not unconscionable.

### D.

■ Purcell Tire contends that the liability limitation is ambiguous. In *Alack,* the liability limitation would have encompassed "any" damages or injuries. 923 S.W.2d at 337. Because "any" includes claims that cannot be released contractually, the contract was ambiguous. *Id.*

■ Ambiguity depends on context. See *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). Contract language is not interpreted in a vacuum, but by reference to the contract as a whole. *Id.* The contract as a whole limited Beechcraft's liability. The contract begins with three paragraphs stating that the survey is not a statement of airworthiness, that Beechcraft makes no warranties, and that more thorough surveys can be performed. The contract ends with the statement that Beechcraft's liability is limited to the cost of services.

■ Language that is ambiguous to an unsophisticated party may not be ambiguous to a sophisticated commercial entity. *Alack,* 923 S.W.2d at 338 n. 4. Beechcraft and Purcell Tire were sophisticated busi-

nesses, experienced in this type of transaction. See *Malan,* 953 S.W.2d at 627–28. In this commercial context, no ambiguity exists.

## V.

The judgment of the circuit court is affirmed.

LIMBAUGH, C.J., HOLSTEIN, WOLFF and PRICE, JJ., and SIMON, Sp. J., concur; WHITE, J., concurs in separate opinion filed; WOLFF, J., concurs in opinion of WHITE, J.

LAURA DENVIR STITH, J., not participating.

WHITE, Judge, concurring.

I concur fully in the principal opinion. I write separately to emphasize the important differences between this case and *Alack v. Vic Tanny, Inc.,*[1] and to stress that the Court's ruling is premised on the particular, narrow claim plead here, and does not disturb the general "express negligence" rule established in *Alack.*

Three factors present in this case significantly limit the breadth of the Court's holding. First, plaintiff is a textbook example of a sophisticated contractor. As the principal opinion notes, the standards for waivers of negligence liability by consumers established in *Alack* are much more stringent than those applied here, and those standards would not be satisfied by the contract provision at issue in this appeal. Second, this case involves only economic damages. As the principal opinion's citation to *Bracey v. Monsanto* suggests, the conscionability of limitations on personal injury damages is judged by much stricter standards than those applied here.[2]

What takes this case completely outside the general rule announced in *Alack,* however, is the nature of plaintiff's "negligence" claim. Plaintiff pleads that defendant negligently failed to perform the inspection defendant had contracted to perform. That is, plaintiff has pleaded no more than that defendant has (negligently) failed to perform the terms of its contract. Whether this action even sounds in tort (as opposed to contract) is not a topic upon which the parties have favored us with briefing, and the principal opinion reasonably refrains from deciding the question, since the liability limiting provision here is sufficient to preclude this narrowly drawn cause of action.

The contract provision at issue here provides that Beechcraft's "liability ... *under the agreement*" (emphasis supplied) shall be limited to the cost of the inspection. This language is sufficiently clear to limit liability for the particular claim plead here, because the only "negligence" alleged is the violation of a contract term. Such liability undoubtedly arises "under the agreement," regardless of whether it is formally considered tort or contract liability. Because the provision only limits liability arising "under the agreement," it is much narrower than the provision at issue in *Alack,* which purported to release defendant from liability for any personal injuries occurring in, on or around defendant's premises, and was in no way limited to liability based upon a breach of the agreement itself. Here, as the principal opinion says, the contract was unmistakably clear that liability for violation of its

---

1. 923 S.W.2d 330 (Mo. banc 1996).

2. 823 S.W.2d 946, 948–50 (Mo. banc 1992); *cf.* Sec. 400.2–719(3), RSMo 2000 (limitations of consequential damages are presumptively unconscionable when damages are related to personal injuries; limitations of economic damages are not presumptively unconscionable).

terms was limited. The Court, however, is not presented with, and does not decide the question of whether this provision expressly, clearly and unmistakably disclaims liability for duties imposed not by explicit agreement, but by the general principles of tort law.

*Alack* established that negligence waivers may never be enforced against consumers in the absence of express, conspicuous and unambiguous language. This case is one of the narrow situations—which *Alack* contemplates—where sophisticated commercial contractors may enter enforceable agreements to limit liability for specifically identified tortious conduct without using the words "negligence" or "fault." The exception to the express negligence rule outlined in the principal opinion, however, is no broader than the terms of the particular cause of action plead here.

I concur that the judgment of the trial court should be affirmed for the reasons stated in the principal opinion.