**UTILITY SERVICE AND MAINTE-NANCE, INC., and TIG Insurance Company, Respondents,**

v.

**NORANDA ALUMINUM, INC., and Zurich Insurance Company, Appellants.**

No. SC 86363.

Supreme Court of Missouri, En Banc.

May 31, 2005.

John M. McFarland, Bradley J. Baumgart, Kutak Rock LLP, Kansas City, MO, Mark G. Arnold, Ronald C. Willenbrock, Mark F. Mueller, St. Louis, MO, for Appellants.

Debbie S. Champion, Amy R. Brown, Gerre S. Langton, St. Louis, MO, for Respondents.

MICHAEL A. WOLFF, Judge.

This case calls for interpretation of an indemnity provision that was part of a contract between two businesses. The trial court held that the indemnity provision was not enforceable. This Court concludes that the provision should be enforced as written and reverses the judgment of the trial court.

**Facts and Procedural History**

Noranda Aluminum, Inc., operates an aluminum manufacturing plant in New Madrid, Missouri. Utility Service & Maintenance, Inc., specializes in the technical and dangerous job of painting high voltage electrical equipment for industrial clients. TIG Insurance Company issued general liability and excess insurance policies totaling $ 5 million to Utility. These policies included coverage for liabilities resulting from any agreements under which Utility assumed the tort liability of another party. Noranda was insured by Zurich Insurance Company.

Noranda requested a bid from Utility in July 1992 for industrial painting at Noranda's New Madrid facility. Noranda's bid request states that it includes Exhibit C, including a provision requiring Utility to indemnify Noranda. Utility's president, Denny Dunaway, testified that he did not receive Exhibit C along with the bid solicitation. Dunaway, however, signed Utility's proposal and sent it to Noranda, affirming that Utility had received all of the information listed as included in the bid solicitation.

Noranda issued a purchase order to Utility in August 1992. The purchase order stated that its acceptance "confirms [Utility's] acknowledgement of [Noranda's] standard terms and conditions." Dunaway received a copy of Noranda's standard terms and conditions in September 1992 before Utility's work was to begin under the contract.

The standard terms and conditions include Paragraph 19, which states:

> Seller [Utility] shall indemnify and save Purchaser [Noranda] free and harmless from and against any and all claims, damages, liabilities or obligations of whatsoever kind, including, but not limited to, damage or destruction of prop-

erty and injury or death of persons resulting from or connected with Seller's performance hereunder or any default by Seller or breach of its obligations hereunder.

This Court agrees with the circuit court's conclusion that Paragraph 19 was part of the parties' contract.

In October 1992, Gary Murphy, a Utility employee, was severely injured while working at Noranda's plant under the Utility–Noranda contract. Murphy sued Noranda in the circuit court of St. Louis County in 1995, alleging that Noranda's negligence had caused his injuries. Shortly after the Murphy lawsuit was filed, Noranda requested that Utility defend and indemnify Noranda, based on the indemnity agreement in Exhibit C. Utility passed this request on to TIG, its insurance company, for evaluation. TIG assigned the claim to an experienced senior claims adjuster, who retained the St. Louis law firm of Brown & James to represent Noranda in the lawsuit.

Brown & James entered an appearance in the Murphy suit on Noranda's behalf and requested a continuance to assess whether TIG was obligated to defend Noranda. Brown & James advised Noranda that it might withdraw and ask Noranda to assume the defense if TIG determined that there was no valid indemnity agreement.

Brown & James notified TIG in September 1995 that "paragraph 19 may require Utility to honor the tender of defense and indemnity made by Noranda." Based on this advice, the language of Paragraph 19, and the allegations in Murphy's petition, TIG's adjuster determined that Utility and TIG were obligated to defend and indemnify Noranda. The adjuster instructed Brown & James in December 1995 to "[e]nter an unconditional appearance and answer and proceed with the defense of this case."

Brown & James informed Noranda in writing in January 1996 that TIG had decided to "accept, unconditionally, Noranda Aluminum's tender of defense and indemnification." After receiving this written confirmation from TIG, Noranda allowed TIG's attorneys to handle the defense and to make decisions regarding the lawsuit. TIG ultimately agreed to settle the case for $4.3 million dollars.

In March 1997—over one year after advising that it would unconditionally assume the defense—TIG began requesting Exhibit C, asserting it had never been received. TIG notified Noranda that it was concerned that there was no enforceable indemnity agreement; it consistently referenced Exhibit C, although Exhibit C was not the basis of its assumption of the defense.

The Murphy suit was settled in November 1998. Shortly thereafter, TIG filed an action for declaratory judgment and indemnity, claiming that there was no enforceable indemnification clause in the contract. A bench trial was held in January 2002, and the court found in favor of TIG. The court found that Exhibit C was not a part of the contract, that TIG did not waive its right to withdraw its promise to defend and was not estopped from asserting that right after the case was settled, and that Paragraph 19 did not require Utility to indemnify Noranda for Noranda's own negligence.

On appeal, this Court granted transfer after opinion by the Court of Appeals, Eastern District. This Court has jurisdiction under *Mo. Const. art. V, sec. 10.*

Noranda argues that:

1. TIG is estopped from contesting coverage because it unconditionally accepted the defense without reserving its rights;

2. TIG is estopped from contesting coverage based on the language of Paragraph 19, because it knew about the language before it assumed the defense and did not question the language before settling the lawsuit;

3. TIG was not entitled to indemnification because it voluntarily assumed the defense and paid the settlement with full knowledge of the facts; and

4. TIG was required to defend and indemnify Noranda pursuant to Paragraph 19, which applied even to cases where Noranda's own negligence was alleged.

Zurich also appeals, arguing that the trial court did not have "subject matter jurisdiction" to interpret the contract between Noranda and Zurich and that TIG had no right to indemnification from Noranda and Zurich.[1] This Court concludes that reversal is warranted based on the language of Paragraph 19; there is no need to reach Noranda's other claims or Zurich's contention regarding "subject matter jurisdiction."

**Discussion** [2]

Parties are generally free to contract as they wish, and courts will enforce contracts according to their plain meaning, unless induced by fraud, duress, or undue influence. *Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624, 626–27 (Mo. banc 1997). As a general proposition, however, contractual provisions releasing a party from liability for its own negligent acts must be stated clearly, unequivocally, and conspicuously. *Kansas City Power & Light Co. v. Federal Const. Corp.,* 351 S.W.2d 741, 745 (Mo.1961); *Parks v. Union Carbide Corp.,* 602 S.W.2d 188, 190 (Mo. banc 1980); *Nusbaum v. City of Kansas City,* 100 S.W.3d 101, 105 (Mo. banc 2003). General, broad, and all-inclusive language has been held insufficient to release a party from its own negligence. *Kansas City Power & Light Co.,* 351 S.W.2d at 745; *Economy Forms Corp. v. J.S. Alberici Const. Co., Inc.,* 53 S.W.3d 552, 554–55 (Mo.App.2000).

Despite these general principles regarding contracts that eschew liability, this Court has drawn a distinction between contracts with consumers and contracts between businesses of equal power and sophistication. This Court held, in *Alack v. Vic Tanny Intern. of Missouri, Inc.,* 923 S.W.2d 330 (Mo. banc 1996), that a contract releasing a health club from "any and all claims" was not sufficient to release the club from its own negligence when a consumer was injured. *Id.* at 337. The decision, however, noted that "[t]his case does not involve an agreement negotiated at arms length between equally sophisticated commercial entities. Less precise language may be effective in such situations, and we reserve any such issues." *Id.* at 338, n. 4.

1. Zurich labels its contentions as involving subject matter jurisdiction. In truth, its arguments relate to TIG's standing to enforce or interpret the insurance contract between Zurich and Noranda and to its position that section 379.200 bars entering a judgment against Zurich without obtaining a final judgment against Noranda. Although the "subject matter jurisdiction" label does not seem appropriate, in light of the disposition of this appeal on other grounds, there is no need to address these issues here.

2. In a court-tried civil case, the judgment will be affirmed "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Issues of law are reviewed *de novo.* *Delta Air Lines, Inc. v. Dir. of Revenue,* 908 S.W.2d 353, 355 (Mo. banc 1995).

This Court addressed the issue reserved in *Alack* in *Purcell Tire & Rubber Co., Inc. v. Exec. Beechcraft, Inc.,* 59 S.W.3d 505 (Mo. banc 2001). Purcell contracted to buy a used plane from Beechcraft. Both parties were sophisticated commercial entities that negotiated at arm's length for the purchase. *Id.* at 508. The three-page contract, prepared by Beechcraft, limited Beechcraft's liability to the performance of a maintenance survey prior to purchase. *Id.*

When an oil leak was later discovered that required an engine to be replaced, Purcell sued Beechcraft for negligence in failing to detect the leak during the maintenance survey. *Id.* This Court held that, although limitations of liability for one's own negligence must be clear, unambiguous, unmistakable, and conspicuous, "[s]ophisticated businesses that negotiate at arm's length may limit liability without specifically mentioning 'negligence,' 'fault,' or an equivalent." *Id.* at 509.

The fact that Noranda and Utility did not bargain for the indemnification clause is irrelevant. "Courts enforce the objective terms of contracts between sophisticated businesses, without regard to the parties' subjective intent. The character and quality of negotiations do not vary the terms of a written contract between sophisticated businesses." *Id.* (Citations omitted). In such a contract, the economic reality is that the price for the work may well include the cost of insurance for Utility to indemnify Noranda for "any and all claims." A contract between sophisticated businesses that does not include indemnification would presumably carry a different price than a contract that does include such a provision.

This Court concluded in *Purcell* that use of the word "any" was not ambiguous, where both parties were sophisticated commercial entities. *Id.* at 510–11. The contract here is similar to that in *Purcell.*

TIG argues that Paragraph 19 is ambiguous and therefore should be interpreted as applying only to Utility's performance. The contract, however, specifically states that it includes, but is not limited to, Utility's performance under the contract. Thus, the contract by its plain language states that it relates to more than just Utility's performance. There is nothing ambiguous about a requirement that one party indemnify the other for "any and all claims" in a commercial contract. Claims for Noranda's negligence are included within the phrase "any and all claims." *See Monsanto Co. v. Gould Electronics, Inc.,* 965 S.W.2d 314, 316–17 (Mo. App.1998). This language was sufficient to require Utility, a sophisticated commercial entity, to indemnify Noranda for all claims, including those alleging negligence by Noranda.

TIG also argues that the indemnity provision of Paragraph 19 is not conspicuous. There is no material difference between the indemnity provision here and that in *Purcell.* Although Paragraph 19 was not specifically identified as an indemnity provision, it was one of 23 provisions referenced as being part of the contract. Utility's president testified that indemnity provisions were always included in its contracts; Utility, therefore, should have looked for and recognized the provision. Any failure to read the conditions thoroughly was due to Utility's own fault.

The requirement that clauses providing indemnity for one's own negligence be conspicuous remains, particularly for contracts involving consumers. However, in a case such as this, where the parties are contracting for the performance of technical and dangerous work, and where both parties are sophisticated commercial entities, it is not required that the

indemnity provision be set apart from the other contractual provisions or that it be labeled as an indemnity provision.

## Conclusion

Because Paragraph 19 is enforceable, the trial court erred in concluding that TIG had no duty to indemnify Noranda. Since this issue is dispositive, Noranda's remaining claims and Zurich's claims regarding "subject matter jurisdiction" are not addressed.

The judgment of the circuit court is reversed.

WHITE, C.J., STITH, PRICE, TEITELMAN and LIMBAUGH, JJ., and QUIGLESS, Sp.J., concur.

RUSSELL, J., not participating.