

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| NATIONAL INFORMATION SOLUTIONS, INC., | ) ) ) | No. ED101636 |
| | ) | Appeal from the Circuit Court |
| Appellant, | ) | of St. Charles County |
| vs. | ) | |
| | ) | Hon. Daniel G. Pelikan |
| CORD MOVING & STORAGE COMPANY, INC., | ) ) | |
| | ) | Filed: |
| Respondent. | ) | February 24, 2015 |

National Information Solutions, Inc. ("NISC"[1]) appeals from the judgment granting Cord

Moving & Storage Company's motion for summary judgment and denying NISC's motion for

partial summary judgment on the same issue.[2] We affirm.

NISC entered an Office Relocation Agreement with Cord in which Cord agreed to move

the contents of NISC's warehouse to a new location. The one-page Agreement contained the

following provision in the middle of the page in a bold typeface larger than the rest of the

contract:

**Insurance:**

**Cord's liability is $.30 cents per pound, per article. If you require additional
insurance, you can explore options with your present insurance carrier, or
call an independent cargo insurance provider.**

---

[1] National Information Solutions, Inc. is referred to throughout the record on appeal as "National Information Solutions Cooperative, Inc." or "NISC."

[2] Our decision affirming summary judgment in Cord's favor disposes of the appeal of the denial of NISC's partial summary judgment motion. See Antrim v. Wolken, 228 S.W.3d 50, 55 (Mo. App. E.D. 2007).

After a copier was damaged during the move, NISC "short-paid" Cord $450, which represented $.30 per pound for the damaged copier.

Thereafter, NISC filed a one-count petition alleging that Cord was negligent in failing to properly secure the copier during the move. Cord asserted as an affirmative defense that the Agreement limited Cord's liability for its own negligence to the $.30 per pound NISC had already recovered. Cord then moved for summary judgment on that basis. In response to Cord's motion, NISC argued that the limitation on liability was not valid with respect to claims of negligence because the Agreement did not explicitly refer to "negligence" or use similar language. Cord replied that the Agreement was between "sophisticated commercial entities" and, therefore, less precise language was acceptable to limit liability even for one's own negligence. NISC moved for partial summary judgment on the same issue, seeking a judgment that as a matter of law Cord could not succeed on its affirmative defense. The trial court granted Cord's motion, denied NISC's motion and entered judgment in Cord's favor. This appeal follows.

Summary judgment is proper when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Rule 74.04. In this case, Cord may establish a right to summary judgment by showing that there is no genuine dispute as to the existence of the facts required to support its affirmative defense. See ITT Commercial Finance Corporation v. Mid-America Marine Supply Corporation, 854 S.W.2d 371, 381 (Mo. banc 1993).

In general, for a party to effectively release itself from or limit liability for its own negligence, the language of the contract must be clear, unequivocal, conspicuous and include the word "negligence" or its equivalent. Alack v. Vic Tanny International of Missouri, Inc., 923 S.W.2d 330, 337 (Mo. banc 1996). But less precise language may be effective when the contract

is negotiated at arm's-length between equally sophisticated commercial entities. Id. at 346 n.4. The first case to discuss this "sophisticated business" exception in depth was Purcell Tire & Rubber Company v. Executive Beechcraft, Inc., 59 S.W.3d 505 (Mo. banc 2001).

In that case, the Purcell tire company contracted with Beechcraft to perform a pre-purchase survey of an airplane Purcell wanted to buy. Id. at 507. The contract contained a provision limiting Beechcraft's liability to the cost of the services performed thereunder. Id. at 508. Purcell sued Beechcraft for breach and negligence after discovering an oil leak that Beechcraft had overlooked, and the trial court enforced the provision limiting Beechcraft's liability to the price of the contract. Id. On appeal, the Supreme Court started its analysis by referring to both parties as "sophisticated businesses," pointing out that Purcell was a large retail tire chain and also noting that its president was a former pilot who had "been involved in fifteen plane purchases and fourteen pre-purchase inspections." Id. The Court determined that, as sophisticated businesses, these parties could limit liability for their own negligence without specifically mentioning "negligence" or the equivalent. Id. at 509.

The Court then went on to reject other arguments for why the provision should not be enforced, in each instance referring back to the fact that the parties were "sophisticated businesses." Id. at 509-10 (provision did not lack consideration and was not unconscionable). Id. at 510. In its discussion of whether the phrase "any claims" in the provision was ambiguous, the Court stated that ambiguity depends on context, pointing out that language that is ambiguous to an "unsophisticated party may not be ambiguous to a sophisticated commercial entity." Id. at 510. It concluded that Beechcraft and Purcell were "sophisticated businesses, experienced in this type of transaction" and in that commercial context, no ambiguity existed. Id. at 510-11. Although the Court did not specifically cite the facts upon which it relied to reach this conclusion

about the parties' experience, we can fairly assume that the other pre-purchase inspections in which Purcell was involved were a relevant factor in deciding whether the language in this contract was ambiguous to Purcell.

The Supreme Court addressed this issue again just a few years later in Utility Service and Maintenance, Inc. v. Noranda Aluminum, Inc., 163 S.W.3d 910 (Mo. banc 2005). The Court held that the language "any and all claims" in an indemnity provision was sufficient to require Utility, a "sophisticated commercial entity," to indemnify Noranda for all claims including negligence. Id. at 914, 915. The opinion describes Utility as an industrial painting company, but does not indicate on what facts the Court based its conclusion that Utility was "sophisticated." Id. at 911.

Just last year, while the instant case was pending in the trial court, the Western District addressed the "sophisticated business" exception in detail in Village of Big Lake v. BNSF Railway Company, Inc., 433 S.W.3d 460 (Mo. App. W.D. 2014). The court discussed Purcell and Noranda at length and concluded that "a different standard applies to determine whether general exculpatory clauses or indemnity clauses can cover claims of future negligence depending on whether the parties to the contract are 'sophisticated businesses, experienced in this type of transaction.'" Id. at 468 (quoting Purcell, 59 S.W.3d at 510-11). The court held as an apparent matter of first impression that this issue is a question of fact, citing to Purcell as a having gone to "great lengths" to set forth the facts before concluding that the parties were "sophisticated businesses in the '*type of transaction*' involved in the case." Id. at 470 (quoting Purcell, emphasis added by Big Lake). In a footnote to that sentence, the court found that Purcell's reliance on the type of transaction in determining sophistication suggested that an entity may be sophisticated in one negotiation but not in another:

4

> Thus, it is not merely the characterization of a contracting party as a business, commercial entity or governmental entity that disposes of the question of sophistication. Rather, all relevant facts must be considered including the party's relative bargaining power and experience in the subject matter of the contract.

Id. at 471 n.8. The railroad in that case sought to enforce a provision in pipeline permits it had issued to the village, which purported to release the railroad from liability. Ultimately, the court concluded that the record was devoid of any facts showing the permits were negotiated at arm's length between "businesses or commercial entities of equal power and sophistication in such transactions." Id. at 471.

NISC argues that under Purcell and Big Lake, Cord must prove NISC is sophisticated in the subject matter of this contract—namely, that it is sophisticated in moving office equipment. We disagree. Big Lake does seem to paraphrase Purcell in a way that suggests a party must be "sophisticated"—as opposed to merely "experienced"—in the "type of transaction" at issue, which the Western District seems, in places, to equate with the "subject matter of a contract." We find some of this paraphrasing misinterprets Purcell, especially to the extent that it focuses on one phrase in that opinion—"experienced in this type of transaction"—as the standard of proof for this exception to apply and then restates that phrase in a way that changes its meaning. We note that no other court—including the Supreme Court itself—has relied on that particular language when citing to Purcell. See Noranda, *supra*; see also Lone Star Industries, Inc. v. Howell Trucking, Inc., 199 S.W.3d 900, 907 n.2 (Mo. App. E.D. 2006) (noting, but not applying, distinction in Purcell for "businesses of equal power and sophistication" and "sophisticated businesses that negotiate at arm's length"); Caballero v. Stafford, 202 S.W.3d 683, 696 n.2 (Mo. App. S.D. 2006) (noting absence of facts in record indicating individual truck driver was "sophisticated commercial entity"); Milligan v. Chesterfield Village GP, LLC, 239 S.W.3d 613,

5

629 n. 3 (Mo. App. S.D. 2007) (referencing "sophisticated businesses that negotiate at arm's length").

Regardless, the Western District's statements were not essential to the court's conclusion in Big Lake, which relied on the total absence of any facts in the record—beyond the assertion that the village was a municipality—showing that the village was sophisticated or experienced in any way. Because the court had no facts before it—and thus no opportunity to analyze those facts under any of its iterations of the law in Purcell—those statements are likely dicta and not binding precedent on us. Statements are obiter dicta if they are not essential to the court's decision of the issue before it. Brooks v. State, 128 S.W.3d 844, 855 (Mo. banc 2004) ("A judicial opinion should be read in light of the facts pertinent to that case, it being improper to give permanent and controlling effect to statements outside the scope of the real inquiry of the case.")

We find that the precise language of Purcell requires us, at most, to consider whether the party resisting enforcement of an exculpatory provision is "experienced in the type of transaction" at issue such that the party cannot fairly claim to have found the provision ambiguous. 59 S.W.3d at 510-11. Beyond that, we find nothing in Purcell that would require proof that NISC was sophisticated in the subject of moving office equipment. We believe the following undisputed facts in this case demonstrate that NISC was a sophisticated business under Purcell and that it cannot now escape enforcement of the limitation on liability provision— contained in an agreement that it negotiated at arm's length with Cord—on the ground that it was unfamiliar with moving contracts.

NISC is a sophisticated commercial entity in the business of offering information technology solutions. NISC employs over 740 people, serves more than 510 energy and

6

telecommunications members in its cooperative across 47 states and American Samoa, bills more than 7.2 million end users, processes more than $12 billion in annual billings and calculates and tracks nearly $1 billion of payroll for its members.

Jackie Rocha was the NISC representative primarily responsible for negotiating the Agreement with Cord. NISC selected Cord through a bidding process; Cord's rates were determined by competition through the bid process. Rocha understood the importance of reviewing and understanding a contract, and she read the Agreement with Cord before signing it. "To the best of her knowledge," Rocha thought she understood the Agreement and would not have signed it if she thought it was ambiguous or did not understand it. Had she been confused, Rocha could have consulted in-house counsel at NISC about the Agreement, but she did not recall doing that. Cord's representative advised Rocha that Cord's liability was limited to $.30 per pound per article and that additional coverage was available from Cord or outsiders, but Rocha declined. After the copier was damaged in the move, Rocha discussed and agreed with Cord that NISC was entitled to a $450 credit ($.30 times the 1500 pounds the copier weighed) and that this "was the deal" they had made under the Agreement.

Rocha was familiar with the process of retaining outside vendors for NISC. One of the other outside vendors with whom NISC contracted was Xerox, which had sold NISC the copier that was damaged in the move. The sales-maintenance agreements between NISC and Xerox contained limitations on liability provisions, which provided that Xerox's damages to NISC were limited to $10,000 or the amounts paid under the agreement. The Xerox representative's testimony about this provision indicates that it was boilerplate language used in "all" of Xerox's agreements with NISC. Rocha declined to have Xerox move the copier itself, choosing Cord because it was less expensive.

These undisputed facts establish that NISC is a sophisticated business entity experienced in this type of transaction with outside vendors.  In this commercial context, the limitation on liability was not ambiguous.   NISC concedes that if it is found to be a sophisticated business entity, the limitation on liability is enforceable.  Summary judgment in Cord's favor was proper.

All points are denied, and the judgment is affirmed.


ROBERT G. DOWD, JR., Judge

Kurt S. Odenwald, P. J. and
Gary M. Gaertner, Jr., J., concur.