[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13776

_____

ALABAMA AIRCRAFT INDUSTRIES, INC.,
ALABAMA AIRCRAFT INDUSTRIES INC BIRMINGHAM,
PEMCO AIRCRAFT ENGINEERING SERVICES INC,

Plaintiffs-Appellants,

*versus*

BOEING COMPANY, THE,
BOEING AEROSPACE OPERATIONS INC,
BOEING AEROSPACE SUPPORT CENTER,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:11-cv-03577-RDP

_____

Before JILL PRYOR, BRANCH, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

More than a dozen years ago, the parties to this appeal agreed to a contractual provision that limits the types of damages they could recover from each other if things went badly. Which they did. The litigation is still going, but only a single statutory tort claim for trade secret misappropriation remains. The question is whether, at the motion to dismiss stage, the contractual damages limitation provision forecloses all of the damages sought on that tort claim. The answer is that it almost does, but not quite. That answer comes from the plain language of the parties' contractual provision read in light of the Missouri Uniform Trade Secrets Act (aka "the Missouri Trade Secrets Act").

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

### A. The First Appeal (*Pemco I*) and the One Remaining Claim

This case has been here before. *See Ala. Aircraft Indus., Inc. v. Boeing Co.*, No. 20-11141, 2022 WL 433457 (11th Cir. Feb. 14, 2022) (unpublished) (*Pemco I*). In our earlier decision, we set out in detail the facts as alleged in the complaint (the operative one at that time), including its description of the long and troubled

relationship between the companies involved in this appeal, Pemco and Boeing.[1] *See id.* at *1–5. We reversed the district court's judgment dismissing the claim that Boeing violated the Missouri Trade Secrets Act by misappropriating Pemco's trade secrets, and we remanded the case for further proceedings. *See id.* at *17.

After remand, Pemco filed a new complaint, which is now the operative one. It asserts a single claim against Boeing for a violation of the Missouri Trade Secrets Act. The district court dismissed the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

We review *de novo* that judgment, accepting as true all well-pleaded allegations in that complaint and construing them in the light most favorable to Pemco.[2] *See Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

### B. Pemco and Boeing's "Teaming Arrangement"

Pemco and Boeing's relationship has varied when it comes to servicing a fleet of aircraft for the United States Air Force.

---

[1] We refer to the parties by the same shorthand names used in the earlier appeal. Pemco is: Alabama Aircraft Industries, Inc.; Alabama Aircraft Industries, Inc. – Birmingham; and Pemco Aircraft Engineering Services, Inc. *Pemco I*, 2022 WL 433457 at *1 n.2. Boeing is: The Boeing Company; Boeing Aerospace Operations, Inc.; and Boeing Aerospace Support Center. *Id.* at *1 n.3.

[2] In its post-remand complaint, Pemco "adopt[ed] and reallege[d]" the background facts as set forth in *Pemco I*. Because that opinion detailed those facts, in this one we hit only the high points.

Sometimes they have competed against each other, and sometimes they have worked together. *See Pemco I*, 2022 WL 433457 at *1–5. In 2005, the two companies entered into three contracts to create a "teaming arrangement" through which they would join forces to bid for a 2008 Air Force contract. *Id.* at *3. Those three contracts were: a memorandum of agreement (aka "a master agreement"), a work share agreement, and a non-disclosure agreement. *Id.* The work share agreement and the non-disclosure agreement were incorporated into the master agreement with the intent that the three agreements would function as one, and that the two companies would work together as one.

The teaming arrangement fell apart, leading to Pemco's present lawsuit. The district court originally dismissed Pemco's trade secrets claim as barred by the Alabama statute of limitations. But Pemco's two claims for breach of contract (based on the non-disclosure agreement and the master agreement) survived the motion to dismiss stage and proceeded to trial. The jury returned a verdict for Pemco on those two claims, awarding it a total of $2,132,038 in direct, out-of-pocket damages. The district court entered judgment for that amount in Pemco's favor on those claims.

Both parties appealed the judgment. *See Pemco I*, 2022 WL 433457 at *1. In that earlier appeal Pemco challenged the dismissal of its trade secrets claim, contending that it wasn't barred by the statute of limitations. *Id.* Reversing the district court's dismissal of that claim, we held that the Missouri statute of limitations, not

the Alabama one, applied.  As a result, the claim wasn't time-barred and should not have been dismissed on that basis.  *Id.* at \*5, \*7–13.

Boeing's cross-appeal challenged a discovery sanction that the district court had imposed and some of the jury instructions that it had given.  *See id.* at \*1.  We rejected those challenges.  The result was that we affirmed the district court's judgment on the jury's verdict in favor of Pemco on its breach of contract claims.  That part of the judgment is not at issue in this appeal.

In the earlier appeal, we did not address the contractual limitation of liability provision because it was not at issue there.  *See generally id.*  It is, however, the centerpiece issue in this appeal because on remand the district court determined that the limitation of liability provision in the master agreement applies to the trade secrets claim.  And that provision, the district court concluded, bars any additional recovery since Pemco has already gotten the maximum amount of damages it could recover from Boeing based on the jury verdict in the trial.  (The jury verdict awarded direct, out-of-pocket damages to Pemco for Boeing's breach of the non-disclosure agreement and the master agreement.)

Pemco appeals the district court's judgment dismissing its trade secrets claim.

## II. DISCUSSION

Pemco first contends that it is entitled to proceed on its Missouri Trade Secrets Act tort claim with all types of damages available to it as if it had no contractual relationship with Boeing and thus there were no limitation of liability.  It argues that Boeing's liability

for its alleged misappropriation of Pemco's trade secrets is subject to no limitations at all. It asserts a slew of arguments in support of its no-limitations position, but they all fail because the limitation of liability provision does apply to Pemco's trade secret act claim. And that provision bars almost every category of monetary recovery that Pemco is seeking on that claim. Almost every category, but not all.

As we will explain, the only additional category of recovery left open for Pemco on its trade secrets claim is for unjust enrichment. Because that is potentially available, Pemco's trade secrets claim survives Boeing's motion to dismiss to that extent and is due to be returned to the district court.

### A. The Master Agreement and Non-disclosure Agreement Function as a Single Contract

Seeking to escape the limitation of liability provision, Pemco first contends that the non-disclosure agreement (which addresses the parties' rights and liabilities with respect to the handling of proprietary information) is a separate, stand-alone agreement. It argues that the non-disclosure agreement is not part of the master agreement, which would matter because the provision limiting liabilities is in the master agreement.

We disagree. The master agreement's merger clause states that the parties' "Entire Agreement" is the master agreement, which expressly includes its "Exhibits and Attachments," one of which is the non-disclosure agreement. Under Missouri law, which applies to these agreements, the master agreement and the non-

disclosure agreement are components of a single contract, and they function as a single contract. *See Bridgecrest Acceptance Corp. v. Donaldson*, 648 S.W.3d 745, 752 (Mo. 2022) ("In Missouri, matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract *in haec verba*."); *Intertel, Inc. v. Sedgwick Claims Mgmt. Servs., Inc.*, 204 S.W.3d 183, 196 (Mo. Ct. App. 2006) ("Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument."). Because of the merger clause the agreements are to be treated as a single contract; Pemco's argument that the non-disclosure agreement is itself a stand-alone contract fails. Pemco cannot free itself from the limitation of liability provision it agreed to in the master agreement on the theory that the non-disclosure agreement is a separate and independent one.

### B. The Limitation of Liability Provision in the Master Agreement is Not Limited to Breach of Contract Claims and Applies to Tort Claims as Well

The limitation of liability provision appears in a section of the master agreement titled "LIMITED OBLIGATION," which expressly lists certain categories of damages that the parties have agreed that they will not seek from each other. That provision states:

> 11.1 The Parties recognize that one Party (the "Breaching Party") may fail to perform its obligations

under this Agreement (a "Breach") and thereby cause damage to the other Party (the "Non-Breaching Party"). The Parties, having full consideration [sic] to the nature of this transaction, agree that the following categories of damages are disclaimed by each Party, and *the Non-breaching Party neither expects, nor will seek, to recover from the Breaching Party any incidental damages, punitive and exemplary damages and any consequential damages*, including but not limited to the following: (a) any profits that the Non-breaching Party expected to earn on the Prime Contract or any other contract related to the Program; (b) any costs incurred by the Non-breaching Party related to resolving the dispute with the Breaching Party arising out of the Breach, including litigation or arbitration expenses and attorneys' fees.

So Pemco agreed that it would not seek from Boeing "any incidental damages, punitive and exemplary damages and any consequential damages, including but not limited to" Pemco's lost profits and its attorney's fees and costs.

Even though the limitation of liability provision refers to a "breach" of the agreement, and not to a tort arising from or involving the agreement, the district court determined that the provision also applies to and restricts damages for tort claims. It did so because the liability limitation provision bars punitive or exemplary damages that are available for tort claims, such as Pemco's statutory trade secrets claim, but are not available for breach of contract claims. As the district court explained: "Because punitive damages

are not available in contract, Boeing is correct that the [limitation of liability] clause is necessarily broad enough to reach to at least some non-contract claims. Any other construction would leave the provision's reference to punitive damages with 'no independent meaning.'" We agree.

Missouri law emphatically does not permit punitive damages to be recovered for a breach of contract. *See, e.g.*, *Dewey v. Am. Stair Glide Corp.*, 557 S.W.2d 643, 650 (Mo. Ct. App. 1977) ("It is beyond question that punitive damages do not lie for a breach of contract."); *All Star Awards & Ad Specialties, Inc. v. HALO Branded Sols., Inc.*, 642 S.W.3d 281, 289 n.12 (Mo. 2022) (noting that "Missouri law never allowed [punitive] damages for breaches of contractual obligations, even when bad faith motivated the breach"). If the limitation of liability provision were not construed to apply to some tort claims, the inclusion of punitive and exemplary damages in that limitation provision would not make sense, would serve no purpose, and would have no meaning or effect.

Pemco and Boeing would have had no reason to disclaim punitive and exemplary damages if the limitation of liability provision did not apply to tort claims, like Pemco's trade secrets claim, that are intertwined with a breach of contract claim. *See Pemco I*, 2022 WL 433457 at *9 (recognizing the "nexus" between Pemco's trade secrets claim and the non-disclosure agreement). It is true that the limitation of liability provision applies to claims that arise from one party's "fail[ure] to perform its obligations under" the

master agreement, "thereby caus[ing] damage to the other Party," meaning breaches of contract.

But that doesn't mean the limitation of liability provision applies *only* to contract claims. It couldn't apply only to contract claims because, if it did, the punitive damages exclusion would be superfluous. And that result would run counter to what the Missouri Supreme Court has described as "a cardinal rule of contract construction" that agreements should not be interpreted to render parts of them superfluous. *See TAP Pharm. Prods. Inc. v. State Bd. of Pharmacy*, 238 S.W.3d 140, 144 (Mo. 2007); *see also State ex rel. Riverside Pipeline Co., L.P. v. Pub. Serv. Comm'n of State*, 215 S.W.3d 76, 84 (Mo. 2007) ("A contract must be construed as a whole so as to not render any terms meaningless, and a construction that gives a reasonable meaning to each phrase and clause and harmonizes all provisions is preferred over a construction that leaves some of the provisions without function or sense."); *Ringstreet Northcrest, Inc. v. Bisanz*, 890 S.W.2d 713, 718 (Mo. Ct. App. 1995) (Missouri law requires courts to construe each term in a contract "to avoid an effect which renders other terms meaningless.").[3]

---

[3] While acknowledging that Missouri law generally doesn't allow punitive damages on a breach of contract claim, Pemco argues that an exception may exist for punitive damages arising from a breach of contract "based on [a] fiduciary's holding himself out to the public as worthy of trust." *Peterson v. Cont'l Boiler Works, Inc.*, 783 S.W.2d 896, 903 (Mo. 1990). If that narrow exception exists, it has no application here. Pemco and Boeing expressly disclaimed any fiduciary relationship. They agreed that they would act as independent

And as we recognized in the earlier appeal, we have "no need to define the outer bounds of what sort of tort claims would fall into" the provisions of the parties' contractual agreements, including the limitation of liability provision. *See Pemco I*, 2022 WL 433457 at *9. We don't because it is "clear that Pemco's misappropriation-of-trade-secrets claim, which arose from the exchange of proprietary information in connection with the parties' teaming arrangement, is the sort of tort claim" that the parties intended the liability limitation provision to govern. *See id.* Whether they intended it to apply to a tort claim unrelated to their contractual relationship doesn't matter. *See id.* It doesn't matter because the parties' agreements, including the master agreement and the non-disclosure agreement, set the terms of their teaming arrangement, and Pemco's trade secrets misappropriation claim has obvious connections to Boeing's breach of the non-disclosure agreement.

All of which is to say that the limitation of liability provision limits the damages available for Pemco to recover on its Missouri Trade Secrets Act claim.

### C. The Limitation of Liability Provision Does Not Violate Missouri Public Policy

In its attempt to pull its Missouri Trade Secrets Act claim from the clutches of the limitation of liability provision it agreed

---

contractors in relation to one another and that "[n]o other relationship outside of that contemplated by the terms of this Agreement shall be created hereby." There is no fiduciary relationship between them.

to, Pemco also advances a public policy argument. It contends that enforcing the limitation of liability provision against it would violate Missouri public policy against exoneration for future intentional torts and the public policy that statutory remedies for trade secret violations cannot be "waived." Those contentions are not supported by Missouri law.

As a general rule, Missouri does not allow parties to contractually *exonerate* themselves for future liability for intentional torts. *See Alack v. Vic Tanny Int'l of Mo., Inc.*, 923 S.W.2d 330, 337 (Mo. 1996) ("[T]here is no question that one may never exonerate oneself from future liability for intentional torts or for gross negligence, or for activities involving the public interest."). That general rule was announced in *Alack*, a personal injury case involving an agreement between a consumer and a business entity, not an agreement between two large, sophisticated commercial companies that had negotiated a contractual limitation on the monetary damages that one of them might recover from the other. *See id.* at 337–38 & 338 n.4.

The opinion in the *Alack* case itself disavows any application of the rule in that consumer case to circumstances like the ones in this case. *Alack* involved a gym membership contract purporting to release the gym from "any and all claims." *See id.* at 333. The Supreme Court of Missouri held that language would not be effective against a consumer plaintiff's claim for injury allegedly caused by the gym's negligently maintained equipment. *Id.* at 337–38. But in its *Alack* opinion the Court made a point of noting that it was *not*

deciding whether "an agreement negotiated at arms length between equally sophisticated commercial entities" could limit liability for future tort claims. *Id.* at 338 n.4.

Five years later the Supreme Court of Missouri decided a case involving a liability limitation provision in a contract that was negotiated at arm's length between two companies, presenting the issue the court had reserved in *Alack*. *See id*; *cf. Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*, 59 S.W.3d 505, 508 (Mo. 2001). In *Purcell Tire* the contractual limitation of liability provision that the court enforced applied to the plaintiff's breach of contract and negligence claims. 59 S.W.3d at 508. That provision stated: "It is expressly agreed that the liability, if any, of [the defendant] under this agreement shall be limited to the cost of services performed hereunder." *Id.*

The defendant, Executive Beechcraft, had agreed to perform a "survey" or inspection of an airplane before it was sold to the plaintiff, but its post-inspection report didn't mention that the plane being sold had an oil leak. *See id.* After the leak was discovered, the plaintiff filed a complaint alleging breach of contract and the tort negligence, seeking $372,458 in damages. *See id.* The court held that the plaintiff's total recovery was limited to the $1,250 cost of the inspection, even though the liability limitation didn't mention tort claims and instead referred to liability "under this agreement." *See id.* at 508, 511.

The court reasoned that "[s]ophisticated parties have freedom of contract — even to make a bad bargain, or to relinquish

fundamental rights." *Id.* at 508. And "[s]ophisticated parties may contractually limit future remedies." *Id.* That is relevant to the present case because that's what Boeing and Pemco did when they disclaimed entire categories of damages, including punitive damages, which are not available for contract claims under Missouri law. *Purcell* establishes that under Missouri law, sophisticated parties are free to contractually limit future remedies, including for tort claims that are related to the performance of the contract. *See id.*

Part of the risk for the *Purcell* plaintiff was that Beechcraft might breach the contract and negligently perform the inspection of the plane and miss or fail to disclose a serious problem with the plane, which could (and did) prove costly. But the agreed upon liability limitation still applied. Similarly, part of the risk for Pemco was that Boeing might breach the non-disclosure agreement and misappropriate Pemco's trade secrets, which could prove costly. And that's what Pemco alleges that Boeing did, and that it was costly. We believe the Missouri Supreme Court would hold that under its *Purcell* decision the limitation of liability provision that these two sophisticated, commercial parties made as part of their contractual relationship is valid and applicable to Pemco's trade secrets claim.

Pemco attempts to distinguish *Purcell*, arguing that the negligence claim in that case is qualitatively different from the intentional tort Pemco has alleged under the Missouri Trade Secrets Act in this case. But in their master agreement, the parties expressly

22-13776                Opinion of the Court                15

disclaimed among other things *punitive and exemplary* damages, which means they agreed that they would *not* expect or seek damages for intentional tortious conduct, including conduct egregious enough to merit punishment in the form of punitive damages. And Pemco and Boeing expressly incorporated the non-disclosure agreement into the master agreement, which brought violations of the non-disclosure agreement within the overarching limitation of liability that the master agreement contained.

The limitation of liability provision that Pemco and Boeing agreed to does not violate Missouri public policy. And we need not and do not decide whether the provision would comport with Missouri public policy if it barred *all* damages for Pemco's trade secrets claim, completely exonerating Boeing from any liability for that conduct. *See Alack*, 923 S.W.2d at 337. For reasons we will explain, *see infra* at 27–29, we don't have to decide that question because the liability limitation doesn't bar all of the damages that Pemco seeks on its trade secrets claim.[4]

_____

[4] In addition to its public policy arguments against application of the liability limitation provision to its Missouri Trade Secrets Act claim, Pemco asserts two other arguments that merit some discussion. According to Pemco, Boeing's current arguments about the liability limitation provision contradict statements it made earlier in this litigation about how that provision should be interpreted. Regardless of Boeing's arguments or statements about an issue of law, including its interpretation of a contractual provision like the liability limitation one in this case, those are issues that we review *de novo*. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1329 (11th Cir. 1998) (explaining that contract interpretation is a question of law that we review *de*

16                    Opinion of the Court                    22-13776

D. The Trade Secrets Claim Is an Independent Tort Separate from the Claim for Breach of the Non-disclosure Agreement

Under Missouri law "[t]he mere failure to perform a contract cannot serve as the basis of tort liability unless the breach itself is an independent tort." *Ryann Spencer Grp., Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284, 290 (Mo. Ct. App. 2008). Pemco has alleged a tort claim under the Missouri Trade Secrets Act that is not dependent on its breach of contract claims. Here's why it isn't.

---

*novo*). And we are not bound to accept any party's concession about any point of law. *See United States v. Gonzalez*, 71 F.4th 881, 884 (11th Cir. 2023) (recognizing that "[w]e are not bound to accept a party's concession on a question of law") (quotation marks omitted); *see also United States v. Colston*, 4 F.4th 1179, 1187 (11th Cir. 2021) ("Concessions of law . . are never binding on us. The court decides what the law is — not the parties.") (citation omitted); *Roberts v. Galen of Va., Inc.*, 525 U.S. 249, 253 (1999) ("[T]he concession of a point on appeal by [a party] is by no means dispositive of a legal issue . . . ."). As is obvious from what we have already said, applying Missouri law to the plain language of the contracts leads us to conclude that the liability limitation provision does apply to Pemco's trade secrets claim.

Pemco also contends that the district court's order violates this Court's mandate in *Pemco I* because Boeing didn't assert its damages limitations arguments in that first appeal even though Pemco asserted its entitlement to damages. But, as the district court correctly recognized in its order, this Court did not mention the liability limitation provision in our first decision because we weren't deciding whether it applied to Pemco's Missouri Trade Secrets Act claim. Instead, we were deciding only which statute of limitations applied. *See Pemco I*, 2022 WL 433457 at *5, *7–13. The district court's order did not violate this Court's mandate.

The Supreme Court of Missouri has explained that "[a] claim for misappropriation of trade secrets under the [Act] has three elements: (1) a trade secret exists, (2) the defendant misappropriated the trade secret, and (3) the plaintiff is entitled to either damages or injunctive relief." *Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 320 (Mo. 2014).

Whether the trade secrets claim survives Boeing's motion to dismiss turns on the third element: whether Pemco has sufficiently alleged any damages or entitlement to recovery that is not categorically unavailable to it as a matter of law. In dismissing the claim, the district court concluded that Pemco had already recovered all of the damages that were available to it on its breach of the non-disclosure agreement claim. Relying on an Eighth Circuit decision applying Missouri law, the district court determined that because Pemco had already received a full recovery on that contract claim, it could not pursue a Missouri Trade Secrets Act claim "'for the same injury arising from the same course of conduct.'" *See Kforce, Inc. v. Surrex Sols. Corp.*, 436 F.3d 981, 985 (8th Cir. 2006) (holding that the plaintiff had "received a full recovery under a contract claim and cannot now pursue a tort or [Missouri Trade Secrets Act] action for the same injury arising from the same course of conduct").

But in stating its trade secrets claim, Pemco has alleged a category of recovery different from that for which it was compensated when it received direct, out-of-pocket damages on its claim that Boeing had breached the non-disclosure agreement. Pemco claims

18                    Opinion of the Court                    22-13776

that Boeing was unjustly enriched through its misappropriation of Pemco's trade secrets and that it is entitled to obtain Boeing's ill-gotten gains. The Missouri act expressly and plainly addresses unjust enrichment and makes recovery of the amount of the unjust riches proper so long as that amount is not duplicative of what the plaintiff is receiving as actual loss damages for the misappropriation. *See* Mo. Rev. Stat. § 417.457.1.

The Missouri Trade Secrets Act provides that "[d]amages can include *both the actual loss* caused by misappropriation *and the unjust enrichment* caused by misappropriation *that is not taken into account in computing actual loss*." *Id.* (emphasis added). And it directs that the provisions of the Act "shall not affect . . . [c]ontractual remedies, whether or not based upon misappropriation of a trade secret." *Id.* § 417.463.2.1.

As we have explained, the limitation of liability provision applies to Pemco's trade secrets claim, and it clearly bars whole categories of damages. It bars "any incidental damages, punitive and exemplary damages and any consequential damages, including" Pemco's lost profits and its litigation costs and attorney's fees. Conspicuously absent from that list of categorically barred damages, however, is the category of unjust enrichment. Nowhere is that category of recovery — the equitable remedy of unjust enrichment — excluded.

Pemco's operative complaint alleges that Boeing was unjustly enriched by its misappropriation of Pemco's trade secrets. And Pemco argued in its opposition to Boeing's motion to dismiss

that it was entitled to recover from Boeing the extent of its unjust enrichment, and that those damages are not duplicative. The district court's order dismissing Pemco's Missouri Trade Secrets Act claim didn't mention unjust enrichment damages. In its briefs to this Court, Pemco continues to assert that the Missouri act allows it to recover for Boeing's alleged unjust enrichment. On that point, Pemco is correct to the extent that the recovery does not duplicate the amount it has already recovered on its claim for breach of the non-disclosure agreement.

Boeing puts forward two arguments in opposition to Pemco's claim of entitlement to recovery through the unjust enrichment remedy. First, it argues that *any* damages on the Missouri Trade Secrets Act claim would duplicate the jury's award of out-of-pocket damages that Pemco has already received on its breach of the non-disclosure agreement claim. Alternatively, it argues that the liability limitation provision bars unjust enrichment recovery because that provision bars "consequential damages" and unjust enrichment falls into that category. Both arguments fail.

E. The Damages Pemco Received for Its Direct, Out-of-Pocket Loss for the Breach of the Non-disclosure Agreement Did Not Compensate It for Boeing's Alleged Unjust Enrichment Caused by the Misappropriation of Pemco's Trade Secrets

We first address whether damages as a remedy for Boeing's unjust enrichment have already been accounted for in the damages Pemco has already received for Boeing's breach of the non-

disclosure agreement.  Those non-disclosure damages compensated Pemco for its direct, out-of-pocket loss resulting from Boeing's breach of the agreement that governed the parties' proprietary information, including trade secrets.

The reason it matters whether Pemco has already received compensation for Boeing's alleged unjust enrichment, of course, is that Pemco isn't entitled to receive a double recovery for the same injury.  *See* Mo. Rev. Stat. § 417.457.1; *see also Mihlfeld & Assocs., Inc. v. Bishop & Bishop, L.L.C.*, 295 S.W.3d 163, 171 (Mo. Ct. App. 2009) ("A plaintiff is entitled to proceed on various theories of recovery, but cannot receive duplicative damages; instead, a plaintiff must establish a separate injury on each theory."); *Norber v. Marcotte*, 134 S.W.3d 651, 661 (Mo. Ct. App. 2004) ("It is a well-settled rule in Missouri that a party cannot be compensated for the same injury twice.  This is true whether the injury arises out of contract or tort.") (citation omitted); *Norber*, 134 S.W.3d at 661–62 (upholding separate damages awards on breach of partnership agreement and unjust enrichment claims).  Pemco is entitled "to proceed on multiple theories," but it "must allege and prove damages specific to each theory in order to support multiple awards."  *Mihlfeld*, 295 S.W.3d at 171.

On Pemco's claim about Boeing's breach of the non-disclosure agreement, the jury was instructed that if it found in favor of Pemco, it must award the company damages "sustained as a direct result of [the] breach."  It was informed that "[a]n award of direct damages returns a plaintiff to its precontractual position by putting

22-13776               Opinion of the Court                    21

a dollar value on the detriment that the plaintiff incurred in reliance on the now-broken promise and reimbursing expenditures the plaintiff made in performing or preparing to perform its part of the contract."   The jury was also instructed that Pemco sought damages for Boeing's breach of the non-disclosure agreement "consisting of out of pocket expenses, burdened labor expenses, and consultant expenses" totaling $1,343,528, which Pemco incurred in connection with its own work submitting a solo bid to the Air Force.   The jury found in Pemco's favor and awarded $1,343,528 in damages on that breach of contract claim.   The district court entered judgment on that verdict.[5]

Boeing insists that the liability limitation provision bars any and all damages that Pemco might be able to recover on its Missouri Trade Secrets Act claim.   It argues that by agreeing to the limitation provision, Pemco restricted itself to recovering "direct damages," and because it has already recovered direct damages on its breach of the non-disclosure agreement claim, it is fully barred

---

[5] The jury also returned a verdict in Pemco's favor on its breach of the master agreement claim, finding that Boeing had improperly terminated their agreement.   On that claim, the jury awarded Pemco damages in the amount of $788,510. The district court entered judgment on that part of the verdict too, making the total award of direct damages for Pemco's two breach of contract claims $2,132,038.   Even though the master agreement and the non-disclosure agreement function as a single contract, *see supra* at 6–7, the claims were asserted separately, and the jury answered separate questions, returning verdicts on both claims.   The breach of the non-disclosure agreement is directly related to Pemco's Missouri Trade Secrets Act claim because both involve Pemco's trade secrets and Boeing's alleged misuse of them.

from any recovery for the tort of misappropriating trade secrets in violation of the Missouri Trade Secrets Act.

On its trade secrets claim, Pemco seeks, among other things, recovery based on Boeing's unjust enrichment. Specifically, its complaint seeks "[t]he unjust enrichment Boeing received from the award to it of the Recompete Contract, in amounts according to proof at trial." Doc. 651 at 82 ¶ D. And it also seeks to recover "[t]he unjust enrichment Boeing received in the form of cost savings across the entire Boeing San Antonio base, and its programs being operated at the San Antonio base . . . during the period of Boeing's performance of the . . . Recompete contract, in amounts according to proof at trial."[6] *Id.* at 82 ¶ E.

The unjust enrichment recovery Pemco seeks is separate and distinct from Pemco's out-of-pocket expenses for which it was compensated by the jury verdict award on its claim against Boeing

---

[6] Pemco also seeks punitive damages. But the liability limitation provision Pemco agreed on expressly bars any award of punitive damages, so those are categorically unavailable.

Pemco also seeks to recover its own lost profits in the amount of approximately $100 million. But it cannot do that because the liability limitation provision expressly and categorically bars the recovery of Pemco's lost profits. Of course, as we will soon discuss in more detail, an unjust enrichment remedy is a different measure of damages. It seeks the disgorgement of a defendant's ill-gotten gains, not recovery of a plaintiff's lost profits. *See Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1021 (10th Cir. 2008); *cf. Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1359 (11th Cir. 2019) (observing in the trademark infringement context that "the disgorgement of wrongful gains is equitable") (emphasis omitted).

for breach of the non-disclosure agreement.  The two categories of recovery would not be duplicative.  A Tenth Circuit decision interpreting and applying identical language in Utah's uniform trade secrets act illustrates why.

The relevant damages provision in the Utah Trade Secrets Act is the same as the one in the Missouri Act. *See* Utah Code Ann. § 13-24-4(1) (providing that "[d]amages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss"); *accord* Mo. Rev. Stat. § 417.457.1 (same).[7]  Applying that plain language, the Tenth Circuit recognized that a plaintiff may seek unjust enrichment damages to remedy trade secret misappropriation.  *Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1021 (10th Cir. 2008) (Gorsuch, J.).  The Court recognized that the statutory language reflects "the Utah legislature's desire to ensure that misappropriators are not allowed to keep ill-gotten gains from their unlawful acts of misappropriation."  *Id.*

The Tenth Circuit in *Russo* emphasized the "legitimate deterrent function" of the unjust enrichment remedy by quoting the Supreme Court's observation that "one of the functions of trade secret law is to ensure that 'industrial espionage is [not] condoned

_____

[7] It's unsurprising that the same language appears in different states' uniform statutory provisions dictating the damages available for a trade secrets misappropriation claim.  That is, after all, the point of uniformity.  And according to the Uniform Law Commission's website, every state except two has enacted the 1979 Uniform Trade Secrets Act.  *See* https://perma.cc/C3UT-BWF9 (last visited Feb. 13, 2025).

or . . . made profitable.'" *Id.* (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 155 (1989)); *see also* Restatement (Third) of Unfair Competition § 45, cmt. g ("Since the imposition of a reasonable royalty requires the defendant to pay only the amount it would have paid had it fairly bargained for use of the plaintiff's secret, it may not adequately discourage the appropriation of trade secrets."). The Tenth Circuit explained that "[u]nlike a standard breach of contract claim, after all, a misappropriation claim involves an allegation of theft," and thieves may be required to return not just the items they stole but also any ill-gotten gains they have acquired because of their theft. *Russo*, 550 F.3d at 1021.

In *Russo* the plaintiff had asserted a claim for breach of a confidentiality agreement and another claim for misappropriation of trade secrets under the Utah statute, and the Tenth Circuit upheld the jury's awards on both of those claims. *See id.* at 1006, 1009, 1018–19. It noted that the defendant had "offer[ed] no reason or authority suggesting that the [Utah Trade Secrets] Act serves to limit damages obtained in a separate contract action." *Id.* at 1021 n.10. The court pointed to the plain language of the Act providing for recovery for both actual loss damages and unjust enrichment and concluded that both are available so long as they aren't duplicative. *Id.*

The *Russo* decision reflects the prevailing view of damages under the Uniform Trade Secrets Act. *See* Uniform Trade Secrets Act § 3 (1985) cmt. ("As long as there is no double counting, Section 3(a) adopts the principle of the recent cases allowing recovery of

both a complainant's actual losses and a misappropriator's unjust benefit that are caused by misappropriation."); *see also* Michael Risch, *Why Do We Have Trade Secrets?*, 11 Marq. Intell. Prop. L. Rev. 1, 58 (2007) (explaining that the Uniform Trade Secrets Act "also allows for the recovery of the misappropriator's profits" in addition to the trade secret owner's loss, while "[u]njust enrichment is not typically available for breach of contract," and the law allows for disgorgement to deter misappropriation); James W. Hill, *Trade Secrets, Unjust Enrichment, and the Classification of Obligations*, 4 Va. J.L. & Tech. 2, 123, 125 (1999) (observing that the Uniform Trade Secrets Act § 3 provision on damages "allows for annulment of both unjust harm to the plaintiff and unjust enrichment of the defendant" and that "[t]rade-secret remedies reveal much about the societal values inherent in trade secrets and about the rationales behind deterring their wrongful appropriation").

The Sixth Circuit has recently taken the same approach based on the plain language of the Kentucky Trade Secrets Act, which, like the Utah Act the Tenth Circuit addressed in *Russo*, has a provision on damages identical to the one in the Missouri Act. *See Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 392 (6th Cir. 2022); *see also* Ky. Rev. Stat. § 365.884(1) ("Damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss."); *accord* Mo. Rev. Stat. § 417.457.1 (same). The Sixth Circuit recognized that other "courts in trade-secrets cases permit plaintiffs to pursue both compensatory and restitutionary damages, 'provided that there is no

double recovery.'" *Caudill Seed*, 53 F.4th at 392 (quoting Restatement (Third) of Unfair Competition § 45 cmt. c (Am. L. Inst. 1995)). In *Caudill Seed*, the Sixth Circuit upheld a jury award of both compensatory damages and unjust enrichment based on evidence that the defendant "gained a substantial competitive advantage from its misappropriation" of the plaintiff's trade secrets. *Id.*

Boeing has not shown, at this stage, that its allegedly ill-gotten gains and cost savings costs duplicate, overlap, or double-count the actual loss, out-of-pocket damages that Pemco has already recovered on its claim that Boeing breached the non-disclosure agreement.[8]

> F. The Liability Limitation Provision Does Not Categorically Bar an Unjust Enrichment Award on Pemco's Missouri Trade Secrets Act Claim

---

[8] As we mentioned, the district court relied on the Eighth Circuit's *Kforce* decision, 436 F.3d 981, in granting Boeing's motion to dismiss Pemco's trade secrets misappropriation claim. *See supra* at 17–18. *Kforce* involved a plaintiff who settled for liquidated damages and injunctive relief on a breach of contract claim against one defendant and then filed a lawsuit against another one based on the same alleged injury. *See id.* at 983; *see also Hallmark Cards, Inc. v. Monitor Clipper Partners*, LLC, 758 F.3d 1051, 1057 (8th Cir. 2014) (explaining that in *Kforce* "the transmission of trade secrets between two potential defendants create[d] a single injury"). *Kforce* didn't analyze an unjust enrichment theory of recovery under the Missouri Trade Secrets Act and thus is of limited, if any, value in resolving this appeal.

Boeing alternatively contends that the parties' contractual limitation on liability categorically bars recovery of unjust enrichment damages regardless of the claim being asserted because those unjust enrichment damages fall into the category of "consequential damages," which the liability limitation explicitly excludes.  It says that "[t]he unjust enrichment that [Pemco] seeks is Boeing's profits earned and its costs saved on the Air Force contract — both of which *hinged upon the consequence* of the Air Force awarding the contract to Boeing."  Br. of Appellant at 37 n.9 (emphasis added) (record citation omitted).

But "consequential damages" suffered by the plaintiff are different from the unjust enrichment, if any, the defendant enjoyed because of its breach or other wrongful conduct that inflicted damages on the plaintiff.  Under Missouri law, "[c]onsequential damages are those damages naturally and proximately caused by the commission of the breach and those damages that reasonably could have been contemplated by the defendant at the time of the parties' agreement." *Cason v. King*, 327 S.W.3d 543, 553 (Mo. Ct. App. 2010) (quotation marks omitted).

By contrast, unjust enrichment occurs where a benefit was obtained by a defendant in circumstances in which retention of that benefit without paying its reasonable value would be unjust. *JB Contracting, Inc. v. Bierman*, 147 S.W.3d 814, 818–19 (Mo. Ct. App. 2004) ("An unjust enrichment has occurred where a benefit was conferred upon a person in circumstances in which the retention of the benefit, without paying its reasonable value, would be

unjust.") (quotation marks omitted); *id.* at 819 ("The most important requirement is that the enrichment be 'unjust.'"); *see also Am. Standard Ins. Co. of Wis. v. Bracht*, 103 S.W.3d 281, 291 (Mo. Ct. App. 2003) (same); *S & J, Inc. v. McLoud & Co.*, 108 S.W.3d 765, 768 (Mo. Ct. App. 2003) ("In determining whether it would be unjust for the defendant to retain the benefit, courts consider whether any wrongful conduct by the defendant contributed to the plaintiff's disadvantage.").

For an unjust enrichment award, there must be gain to the defendant that it would be unjust for it to retain. *See Am. Standard Ins.*, 103 S.W.3d at 291 (explaining that "it is not the actual amount of the enrichment that is determinative, but the amount of the enrichment which, as between the two parties, would be unjust for one party to retain"). Unlike consequential damages, which serve to make the wronged plaintiff whole and monetarily cure its loss, an unjust enrichment award seeks to deprive the wrongdoer defendant of the gain it obtained from conduct that inflicted the loss on the plaintiff. *Russo*, 550 F.3d at 1021 (explaining that the unjust enrichment remedy is designed to "ensure that misappropriators [of trade secrets] are not allowed to keep ill-gotten gains from their unlawful acts of misappropriation").

If Boeing and Pemco had wanted the liability limitation provision to categorically bar an unjust enrichment award, they could have added it to the list of remedies they specified were barred by that contractual provision. They didn't. Boeing's attempt to force

unjust enrichment into the category of consequential damages after the fact fails.

### III. THE REQUEST FOR REASSIGNMENT

Pemco has asked us to order that this case be assigned to a different district judge on remand. We have the authority to order that a case be reassigned on remand, but we seldom do so, having described that as "a severe remedy." *Stargel v. SunTrust Banks, Inc.*, 791 F.3d 1309, 1311 (11th Cir. 2015) (quotation marks omitted). It would not be justified in this case.

The basis Pemco asserts for its request that we remove the district judge who has been on this case throughout its long history is a response the judge gave to one of its attorneys' persistent questions about long-term scheduling of decisional steps necessary to get the case finished. The discussion came at a post-remand scheduling conference held in 2022. The attorneys and the judge had a civil, thorough, and productive discussion about what was left for the lawyers to tee up for the judge to decide, and how best to schedule the remaining lawyer and judge work in the case.

In that discussion the attorney representing Pemco urged that the proceedings be pushed along so the case could be decided without delay, a goal the district court was sympathetic with. The attorney stated: "We're trying to get there because, frankly, we're losing witnesses: death, cancer. This case is, as you know, 11 years old." The judge's response indicated he thought the best way to get to the end would be to take the remaining, necessary steps one at a time. Pemco's attorney persisted, insisting: "We would still

urge that it will help everyone if we get a sense of the time frame." To which the judge responded:

> Well, I can give you a sense of the time frame. I've had this case since 2011. I'm most likely leaving the bench in 2025. I don't want to deal with this case the rest of the time I'm on the bench. I'm getting rid of this case as soon as I can in the interest of fairness to both sides; okay? So I hear what you're saying.

Pemco emphasizes the judge's "rid of this case" words instead of his "in the interest of fairness to both sides" and "I hear what you're saying" words. It also takes those words out of context of the status conference as a whole in which everyone was working together to get the remaining steps in the case scheduled as promptly as possible for decision. Pemco couples the judge's words with his rulings against it on the trade secrets claim to conclude that he did not proceed in the interest of fairness to both sides. (A position that many losing litigants and some losing lawyers routinely espouse.)

We will not order that a new judge be substituted for one handling a case because he has expressed a legitimate and justified desire for an aged case to be resolved. *Cf. Stargel*, 791 F.3d at 1312 (rejecting the argument that "the judge's ruminations on the potential quality of [a plaintiff's] trial evidence suggest that she would improperly disregard or misweigh that evidence" and denying the request for reassignment to a different judge on remand). Especially not when the attorney urging us to remove the judge was the one urging him to hurry up and get the case decided. Pemco's

request borders on the frivolous, if it doesn't step over the border into the land of frivolity.

Finally, at the risk of incurring a motion to remove ourselves from any future matters that might arise in this case, we join the district court in expressing the hope that this long ongoing litigation will henceforth be resolved "in the interest of fairness to both sides" sooner instead of later.

## IV. CONCLUSION

The district court's judgment dismissing Pemco's latest complaint is REVERSED, and the case is REMANDED for proceedings consistent with this opinion. To be clear, the only remedy potentially available to Pemco on its Missouri Trade Secrets Act claim is based on an unjust enrichment recovery measure. The parties have contractually barred all other remedies sought in the complaint.